IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA
CENTRAL DIVISION

| | |
|---|---|
| MARCIE GUERRERO,<br><br>    Plaintiff,<br><br>vs.<br><br>J.W. HUTTON, INC.,<br><br>    Defendant. | **No. 4:04-cv-40005**<br><br>**O R D E R** |

    This matter is before the Court on Plaintiff's Motion for Partial Summary Judgment and Defendant's cross Motion for Partial Summary Judgment.  The parties moved for partial summary judgment on February 10, 2005.  Hearing was held on the matter on May 3, 2005.  Plaintiff was represented by Gordon Fischer.  Defendant was represented by Heather Palmer.  The matter is now fully submitted for review.  For the reasons discussed below, Defendant's Motion for Partial Summary Judgment is granted.  Plaintiff's Motion for Partial Summary Judgment is denied.

## I.  FACTS

    Plaintiff Marcie Guerrero ("Guerrero") was employed as a subrogation analyst with Defendant J.W. Hutton, Inc. ("J.W. Hutton"), from March of 2002 until her employment was terminated on June 27, 2003.  When Guerrero was hired, she signed the following covenant-not-to-compete:

> I do hereby covenant and agree that as a term and consideration of my employment with J.W. Hutton, Inc. that at no time during the term of this employment, or for three (3) years immediately following termination thereof (regardless of whether such termination is voluntary or involuntary) will I, for myself or in behalf of any other person, partnership, corporation or company, engage in any business activities involving the insurance recovery service within 300 miles of any branch office of J.W. Hutton, Inc. nor will I directly or indirectly for myself or in behalf of, or in conjunction with, any other person, partnership, corporation, or company solicit or attempt to solicit the business or patronage of any person, partnership, corporation, or company for the purpose of selling a service for the recovery of accounts receivables, claim overpayments or subrogation claims or such other incidental business and service now engaged in by J.W. Hutton, Inc. nor will I disclose to any person whatsoever, any of the secrets, methods, systems, client lists, rate charts or other confidential information used by J.W. Hutton, Inc. in and about its business.

Exhibit "A" to Defendant's Answer and Counterclaim.

Both parties agree that during her employment Guerrero independently managed subrogation files for clients of J.W. Hutton. When a file arrived from a client, Guerrero would review the file, which normally contained a police report, the itemized damages, any available statements, and additional information obtained from the client concerning the claim. After reviewing this information, Guerrero would determine the responsible party and contact the insurance company for the responsible party, the responsible party's attorney, or the responsible party themself. When dealing with an insurance company for a responsible party, Guerrero would normally contact an adjuster for the insurance company and request a settlement offer for the

client. After obtaining an offer, Guerrero would then analyze the information in the file and then contact the client and make a settlement recommendation to the client. Guerrero was responsible for continuing to work on settling the claim, and if she determined settlement was unlikely, she would recommend to the client that the client proceed with litigation.

When dealing with a responsible party or their attorney, Guerrero negotiated directly with the responsible party or their attorney to obtain a settlement offer. After obtaining an offer, Guerrero would evaluate whether the client would be able to enforce a judgment against the responsible party by reviewing their assets, including but not limited to whether the responsible party owned a home or other real estate, as well as information regarding their employment. Guerrero would then advise the client whether or not to pursue the claim and if so would recommend a settlement amount or proceed with litigation. During her investigations, Guerrero sometimes identified other responsible third parties. After conducting an asset search, Guerrero would recommend to the client whether to pursue the other responsible third parties through settlement or litigation.

J.W. Hutton contends that between March and June 2003, it received complaints that Guerrero was engaging in unprofessional, threatening, and harassing behavior with respect to the public at work. A notation log documenting events that

occurred on June 11 and June 24, 2003, suggests that Guerrero may have been releasing confidential information regarding litigation to improper parties. Defendant's Appendix, p. 8.

On Friday, June 27, 2003, while Guerrero was on vacation, Julie Bintner, J.W. Hutton's President, learned from several other J.W. Hutton employees that Guerrero was interviewing for a position with Ingenix, a competitor of J.W. Hutton. This interview may have violated the covenant-not-to-compete Guerrero signed with J.W. Hutton. J.W. Hutton states that as a result of the complaints and Guerrero's meeting with a competitor in violation of the covenant-not-to-compete, Guerrero was terminated from employment on June 27, 2003. Guerrero argues that she was on vacation on June 27, 2003, and was terminated the following Monday, June 30, 2003.

On July 16, 2003, counsel for Guerrero sent the following letter to J.W. Hutton:

I am writing on behalf of Marcie Guerrero, who was terminated from her employment effective June 27, 2003. As you are aware, the Subrogation Department earned a quarterly bonus which was due at the end of June. As my client worked nearly the entire quarter, I believe under the Iowa Wage Payment Collection Act, she is entitled to this bonus.

Defendant's Appendix, p. 6. There is no dispute that Guerrero was not paid a quarterly bonus for the quarter ending June 30, 2003. J.W. Hutton paid its employees bonuses based primarily on rewarding longevity, attendance, and ethics. Bonuses are calculated on the last working day of the quarter, and the bonus policy explicitly states

that an employee must be employed through the last working day of the quarter in order to be eligible for a bonus. As a result of the July 16 letter from counsel, J.W. Hutton's bonus review committee met to discuss Guerrero's eligibility for a bonus under the bonus policy. On July 22, 2003, J.W. Hutton sent the following response to counsel for Guerrero:

> Pursuant to request from Attorney Gordon R. Fischer in behalf of Marcie Guerrero, the bonus review committee met to discuss eligibility and termination requirements. These concerns involved an interpretation/review of the eligibility and termination clauses within the current bonus plan at J.W. Hutton, Inc. The following clauses were reviewed:
>
>> Clause "Definition of Eligibility" 2a on page 1. If the employee is detrimentally affecting the company (i.e. breaking the code of work ethics forthright in the employee handbook) at any time during the bonus quarter, the employee loses the bonus.
>>
>> Clause "Termination Eligibility" on page 3. Termination of employment by the employer or by the employee will apply to the bonus plan as follows: 1. An employee must be employed through the last working day of the quarter to be eligible for the bonus.
>
> A unanimous decision to not allow deviation was based upon the above clauses. Therefore, no bonus is due to Marcie Guerrero for the period ending June 30, 2003.

Defendant's Appendix, p. 5.

On November 19, 2003, Guerrero filed suit in Iowa District Court for Madison County. Guerrero asserted two counts, one for failure to compensate her for overtime arising under the Fair Labor Standards Act and one for failure to pay her a bonus

arising under the Iowa Wage Payment Collection Act.  On January 5, 2004, J.W. Hutton removed the action to the United States District Court for the Southern District of Iowa pursuant to 28 U.S.C. §§ 1441 and 1446.  J.W. Hutton responded to Guerrero's Complaint, asserting that under the terms of its bonus policy, Guerrero was not entitled to a bonus and that Guerrero was an exempt administrative employee and thus not entitled to overtime under the FLSA.  J.W. Hutton also filed a counterclaim against Guerrero stemming from her violation of the covenant-not-to-compete she signed.  Guerrero denies she breached the covenant-not-to-compete.

On February 10, 2005, Guerrero filed a Motion for Partial Summary Judgment. Guerrero requests the Court enter summary judgment in her favor with respect to her claim for violation of the Fair Labor Standards Act.  Guerrero asserts that the record evidence is clear that she was not an administrative employee within the meaning of the FLSA and is therefore entitled to overtime pay.

J.W. Hutton resists Guerrero's motion, via its own cross motion for summary judgment filed on February 10, 2005.  J.W. Hutton asserts that the Court should deny Guerrero's FLSA claim and enter judgment as a matter of law in favor of J W. Hutton because Guerrero was an exempt administrative employee during her employment with J.W. Hutton.  In addition, J.W. Hutton contends that it is entitled to summary judgment with respect to Guerrero's claim for a bonus under Iowa Code Chapter 91A

because she was not eligible for the bonus given she was not employed through the last working day of the second quarter of 2003.

## II. APPLICABLE LAW AND DISCUSSION

**A.     Standard of Review**

"[C]laims lacking merit may be dealt with through summary judgment under Rule 56." Swierkiewicz v. Soreman, 122 S. Ct. 992, 998-999 (2002). Summary judgment is a drastic remedy, and the Eighth Circuit has recognized that it "must be exercised with extreme care to prevent taking genuine issues of fact away from juries." Wabun-Inini v. Sessions, 900 F.2d 1234, 1238 (8th Cir. 1990). "The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). See also Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Herring v. Canada Life Ins. Co., 207 F.3d 1026, 1029 (8th Cir. 2000). Summary judgment should seldom be granted in employment cases. Barrett v. City of Minneapolis, 211 F.3d 1097 (8th Cir. 2000).

The party moving for summary judgment bears the initial burden of "informing the district court of the basis for its motion and identifying those portions of the record which show a lack of a genuine issue." Hartnagel v. Norman, 953 F.2d 394, 395 (8th

Cir. 1992) (citing Celotex, 477 U.S. at 323); see also Shelter Ins. Co. v. Hildreth, 255 F.3d 921, 924 (8th Cir. 2001); McGee v. Broz, 251 F.3d 750, 752 (8th Cir. 2001). Once the moving party has carried its burden, the opponent must show that a genuine issue of material facts exists. Nat'l Bank of Commerce of El Dorado, Ark. v. Dow Chem. Co., 165 F.3d 602, 607 (8th Cir. 1999). The Court gives the nonmoving party the benefit of all reasonable inferences and views the facts in the light most favorable to that party. de Llano v. Berglund, 282 F.3d 1031, 1034 (8th Cir. 2002); Pace v. City of Des Moines, 201 F.3d 1050, 1052 (8th Cir. 2000); Prudential Ins. Co. v. Hinkel, 121 F.3d 364, 366 (8th Cir. 1997).

"Summary judgment is proper if the evidence, viewed in the light most favorable to the nonmoving party, demonstrates that no genuine issue of material fact exists and that the moving party is entitled to judgment as a matter of law." Shelton v. ContiGroup Companies, Inc., 285 F.3d 640, 642 (8th Cir. 2002) (citing Henerey v. City of St. Charles, 200 F.3d 1128, 1131 (8th Cir. 1999). Summary judgment should not be granted if the Court can conclude that a reasonable trier of fact could return a verdict for the nonmoving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Burk v. Beene, 948 F.2d 489, 492 (8th Cir. 1991). In light of these standards, the Court considers the present motion.

**B.     Fair Labor Standards Act**

Guerrero's FLSA claim is based on what she asserts is unpaid overtime. Guerrero contends that she was continually being docked in pay and/or threatened to be docked in pay for missing partial days' work, and that she was forced to make up time she was absent from work in increments as small as 15 minutes. Guerrero asserts that she was treated as an hourly, not salaried, employee and that because she was not paid on a salary basis, she is entitled to judgment as a matter of law. J.W. Hutton argues that Guerrero was an administrative employee and thereby exempt from the FLSA's overtime provisions.

"The FLSA was enacted to eliminate labor conditions detrimental to the maintenance of the minimum standard of living necessary for health, efficiency, and general well-being of workers." McAllister v. Transamerica Occidental Life Ins. Co., 325 F.3d 997, 999 (8th Cir. 2003) (quoting 29 U.S.C. § 202(a)) (quotations omitted). To promote this goal, "the FLSA requires employers to pay employees overtime pay for working more than forty hours in a workweek." Id. "However, an employee is exempt from the overtime requirements if she is employed in an administrative capacity, as defined by the Secretary of Labor." Id.

The regulations provide both a short test and a long test to determine whether an employee falls under the administrative exemption. Jarrett v. ERC Properties, Inc.,

211 F.3d 1078, 1081 n 1. (8th Cir. 2000); Auer v. Robbins, 65 F.3d 702, 710 (8th Cir. 1995) (citing 29 C.F.R. §§ 541.1, 541.2). "The 'short test' applies if an employee is paid a salary of at least $250 per week." Auer, 65 F.3d at 710. Both parties agree that Guerrero earned more than $250 per week and thus the short test applies. The short test requires that "[f]or employees who earn more than $250 per week, the 'administrative employee' exemption applies if the employee's primary duty consists of the performance of [office or non-manual work directly related to management policies or general business operations of her employer or her employer's customers], which includes work requiring the exercise of discretion and independent judgment." Jarrett, 211 F.3d at 1081.

Guerrero's main argument stems from her assertion that she was not paid on a salary basis. The regulations state as follows:

> An employee will be considered to be paid on a "salary basis" within the meaning of these regulations if the employee regularly receives each pay period on a weekly, or less frequent basis, a predetermined amount constituting all or part of the employee's compensation, which amount is not subject to reduction because of variations in the quality or quantity of the work performed. Subject to the exceptions provided in paragraph (b) of this section, an exempt employee must receive the full salary for any week in which the employee performs any work without regard to the number of days or hours worked.

29 C.F.R. § 541.602(a) (2005).

> The prohibition against deductions from pay in the salary basis require-
> ment is subject to the following exceptions: (1) Deductions from pay
> may be made when an exempt employee is absent from work for one or
> more full days for personal reasons, other than sickness or disability.
> Thus, if an employee is absent for two full days to handle personal
> affairs, the employee's salaried status will not be affected if deductions
> are made from the salary for two full-day absences. However, if an
> exempt employee is absent for one and a half days for personal reasons,
> the employer can deduct only for the one full-day absence.

29 C.F.R. § 541.602(b) (2005). Guerrero asserts that J.W. Hutton cannot show that she was paid on a salary basis because she was continually being docked in pay, and/or threatened to be docked, for missing partial days' work, claiming that an employer cannot show that an employee is exempt if the employer docks the employee's pay for partial day absences. Guerrero argues that J.W. Hutton's flextime policy effectively converted her position into an hourly position. J.W. Hutton's flextime policy stated,

> As an added benefit, we have a flextime policy. You must schedule
> make up time with your supervisor in 15-minute minimum intervals.
>
> You can use flextime for absences of less than four hours to allow for
> flexibility to schedule personal appointments or attend school functions,
> etc. If your absence is four hours or more, you must use vacation time.
> Flextime should be scheduled a week in advance. Flextime MUST be
> scheduled 24 hours in advance. Your Supervisor in an emergency situa-
> tion can approve flextime but failure to schedule it in advance would
> result in an occurrence in our attendance guidelines.
>
> Flextime must be made up in the same pay period as it is used. Management
> reserves the right to limit flextime to allow for adequate phone coverage.

Defendant's Supplemental Appendix, p. 5.

> There is no support in the case law for the proposition that requiring salaried employees to make up time missed from work due to personal business is inappropriate. Although the salary basis regulation prohibits deductions from an employees's salary for personal absences of less than a day, the regulation does not prohibit an employer from requiring an employee to make up the time he misses.

Cowart v. Ingalls Shipbuilding, Inc., 213 F.3d 261, 265 (5th Cir. 2000). "An employer may require exempt salaried employees to make up for time missed from work due to personal business. It is only when an employer actually deducts from an employee's paycheck that the employee is ineligible for the exemption." Renfro v. Indiana Michigan Power Co., 370 F.3d 512, 516 (6th Cir. 2004). There is no evidence in the record which shows that Guerrero was ever presented with a threat of being docked in pay should she fail to make up time missed from work. Bintner stated in her sworn affidavit that J.W. Hutton never docked Guerrero's pay during her employment. At hearing, counsel for Guerrero admitted that there is no evidence in the record which shows that J.W. Hutton ever docked Guerrero's pay, or any other employee's pay, for failing to make up time missed from work. To the contrary, for the pay period ending June 30, 2002, Guerrero missed 1.5 hours and only made up 0.5 of this time missed. Guerrero's pay stub covering this pay period shows that she was paid for the remaining missed hour, despite not making it up.

Guerrero, citing to Auer v. Robbins, 519 U.S. 452 (1997), states that an employee's exempt status is lost if deductions in pay for time missed are made or if there is a significant likelihood that such deductions will be made. In Auer, the St. Louis Metropolitan Police Department manual contained a written policy that stated an employee's compensation could be reduced for a variety of disciplinary infractions related to the quality or quantity of work performed. Auer, 519 U.S. at 455. In giving controlling weight to the Secretary of Labor's interpretation of the salary-basis test, the Supreme Court found that because all department employees, both hourly and salaried, were covered by the department's manual, the "expressed availability of disciplinary deductions may have reference only to [employees not paid on a salary basis]." Id. at 462. Thus, the court found that the written policy alone was not enough to show that the employee was subject to disciplinary deductions in pay within the meaning of the salary-basis test. Id. The facts of Auer do not assist Guerrero in her argument that there was a significant likelihood that deductions to her compensation would be made. First, unlike the employer in Auer, J.W. Hutton does not have a written policy of making deductions in compensation based upon the quantity of an employee's work. Second, even if such a written policy existed in J.W. Hutton's employee manual, like the employer in Auer, J.W. Hutton employs both salaried and hourly employees; thus, unless the policy specifically stated to which employees it was applicable, as in Auer,

13

"no clear inference [could] be drawn as to the likelihood of a sanction's being applied." Id.

Guerrero claims that the time slips she submitted prove that she was treated as an hourly employee. These time slips establish nothing except that J.W. Hutton tracked its employees' working hours. It was simply J.W. Hutton's policy to require employees to make up time missed, a policy which does not relieve Guerrero of her exempt status. The record evidence shows that Guerrero was a salaried employee.

The short test requires that to be an exempt administrative employee, Guerrero's primary duties must consist of the performance of office or nonmanual work directly related to management policies or general business operations of J W. Hutton or J.W. Hutton's clients, which includes work requiring the exercise of discretion and independent judgment. While Guerrero contends that her employment did not meet this condition, she admitted in her response to J.W. Hutton's Statement of Undisputed Facts that J.W. Hutton's description of her job duties was accurate. This description demonstrates that Guerrero performed office work directly related to insurance recovery management, the primary business of J.W. Hutton. As a subrogation analyst, Guerrero's job duties included the review of client files, the determination of who was the responsible party, making settlement recommendations to clients, and working on settling claims, including conducting negotiations with responsible

parties or their counsel. These responsibilities show that Guerrero was constantly exercising discretion and independent judgment in carrying out her job functions.

There is no basis to infer that there was a significant likelihood that Guerrero's pay would be deducted if she failed to make up time she missed from work. The record demonstrates that Guerrero is an administrative employee and thus exempt from the FLSA's overtime provisions.

**C.     Iowa Wage Payment and Collection Act**

J.W. Hutton contends that it is also entitled to summary judgment with respect to Guerrero's claim for a bonus under Iowa Code Chapter 91A because she was not eligible for the bonus under the company's bonus eligibility guidelines. First, J.W. Hutton states that Guerrero failed to meet its definition of eligibility, which provided that "[i]f the employee is detrimentally affecting the company (i.e. breaking the code of work ethics forthright in the employee handbook) at any time during the bonus quarter, the employee loses the bonus." Second, J.W. Hutton states that Guerrero was ineligible for a bonus because she was not employed through the last working day of the quarter, which was required under the bonus plan. Guerrero counters that she was employed on June 30, 2003, the last day of the quarter, and that the written policies regarding the bonus plan are ambiguous. Both parties agree that the bonus policy was not a contract or an employment agreement.

"The Iowa Wage Payment Collection Law is designed to facilitate the collection of wages owed to employees." Cook v. Electrolux Home Products, Inc., 353 F. Supp. 2d 1002, 1023 (N.D. Iowa 2005) (quoting Jeanes v. Allied Life Ins. Co., 300 F.3d 938, 943-44 (8th Cir. 2002)) (quotations omitted).  "A bonus meets the statutory definition of 'wages.'" Runyon v. Kubota Tractor Corp., 653 N.W.2d 582, 585 (Iowa 2002) (citing Dallenbach v. Mapco Gas Products, Inc., 459 N.W.2d 483 (Iowa 1990)).

Bintner stated in her sworn affidavit that she terminated Guerrero's employment on June 27, 2003, and that Guerrero did not perform any work for J.W. Hutton on June 30, 2003. Guerrero has admitted that she was terminated from employment on June 27, 2003. See Plaintiff's Response to Defendant's Statement of Undisputed Facts, Clerk's No. 15, p. 4, paragraph 14. In addition, in a letter to Bintner from Gordon Ficsher, counsel for Guerrero, dated July 16, 2003, Fischer wrote,

> I am writing on behalf of Marcie Guerrero, *who was terminated from her employment effective June 27, 2003*. As you are aware, the Subrogation Department earned a quarterly bonus which was due at the end of June. As my client worked *nearly the entire quarter*, I believe under the Iowa Wage Payment Collection Act, she is entitled to this bonus.

Defendant's Appendix, p. 6 (emphasis added). Despite Guerrero's own admission, and the statement contained in the July 16 letter from Guerrero's counsel, Guerrero argues she was employed on June 30, relying heavily on her pay stub from the June 16 through June 30, 2003, pay period. This pay stub reveals that Guerrero was paid for a

16

total of eighty hours, sixty-four of which are labeled as "salary" and the remaining sixteen being labeled "vacation salary". J.W. Hutton points out, and the Court notes, that this pay period covers eleven working days, thus the pay period covers eighty-eight, not eighty, working hours. This pay stub would tend to show that Guerrero was indeed terminated from employment on June 27, as she was only paid for ten days of employment, when the pay period covered eleven.

The record demonstrates that Guerrero was not employed on June 30, 2003, the last working day of the quarter. Under the terms of J.W. Hutton's bonus policy, Guerrero is precluded from eligibility for a bonus because she was not employed through the last working day of the quarter.

Guerrero contends that under Iowa law, employers can restrict and refuse bonuses under its policies, but only when the written policies are unambiguous. Guerrero argues that the phrase "detrimentally affecting the company" is ambiguous. Even assuming in the light most favorable to Guerrero that the language of clause 2(a) was ambiguous, the policy language regarding the necessity of being employed on the last working day of the quarter is not. See Lane v. Amoco Corp., 133 F.3d 676, 678 (8th Cir. 1998) (holding that the plain, unambiguous language of the bonus plan, which required year-end employment for receipt of benefits, should be enforced as written in accordance with Iowa law). Guerrero has admitted that she was terminated from

employment on June 27, 2003. Because the language regarding employment through the last working day of the quarter is unambiguous, the Court must enforce this portion of the bonus policy as written. See Lange v. Lange, 520 N.W.2d 113, 117 (Iowa 1994). Guerrero was not entitled to a bonus under the clear terms of J.W. Hutton's bonus policy.

### III.  CONCLUSION

The record shows that Guerrero is an administrative employee and is thereby exempt from the FLSA's overtime provisions. Guerrero's Motion for Partial Summary Judgment [Clerk's No. 10] is denied. Guerrero was not employed through the last day of the quarter, thus she was not entitled to a bonus under the explicit terms of J.W. Hutton's bonus policy. J.W. Hutton's Motion for Partial Summary Judgment on Guerrero's FLSA Iowa Wage Payment and Collection Act claims [Clerk's No. 9] is granted.

**IT IS SO ORDERED.**

Dated this 31st day of May, 2005.

JAMES E. GRITZNER, JUDGE
UNITED STATES DISTRICT COURT